UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RON BALOGUN,                              )<br>         Plaintiff,                            )<br>                                                    )<br>    vs.                                              )<br>                                                    )<br>MIDLAND CREDIT MANAGEMENT, INC.;   )<br>MIDLAND FUNDING NCC-2                 )<br>CORPORATION; and                         )<br>ENCORE CAPITAL GROUP, INC., formerly )<br>MCM CAPITAL GROUP, INC.,              )<br>         Defendants.                          ) | 1:05-cv-1790-LJM-WTL |

### ORDER ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

This cause is now before the Court on plaintiff's, Ron Balogun ("Balogun"), Motion for Class Certification. Balogun has brought this suit alleging that, without authorization, defendants, Midland Credit Management, Inc. ("MCM"), Midland Funding NCC-2 Corporation ("NCC-2"), and Encore Capital Group, Inc. ("Encore") (defendants collectively, "Defendants"), communicated with third parties about Balogun's debt in violation of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692(c). Balogun seeks certification of a class of all natural persons with Indiana addresses who were sent a document similar to a particular letter on or after one year prior to the filing date of this action, and on or before twenty days after the filing of this suit. Compl. ¶ 44. Defendants contend that Balogun's suit is duplicative of that in another jurisdiction and ruling on the instant motion should be stayed pending resolution of the other case. In the alternative, Defendants argue that Balogun has failed to meet the requirements of Federal Rule of Civil Procedure 23(a) ("Rule 23(a)"), and the Court should deny certification on those grounds.

For the reasons discussed herein, the Court **GRANTS** Plaintiff's Motion for Class Certification.

## I. BACKGROUND

### A. THE PARTIES

According to the parties and the Complaint, MCM is an affiliate of Encore, and NCC-2 is a subsidiary of Encore. Compl. ¶ 11. NCC-2 takes title to bad consumer debts, most of which are credit card debts, and functions as a holding company. *Id.* ¶ 5. MCM's principal business activity involves the collection of debts that are held by Encore subsidiaries, including NCC-2. *Id.* ¶ 9.

Encore is a Delaware corporation with its principal place of business in San Diego, California. *Id.* ¶ 11. MCM is a Kansas corporation with its principal places of business in California, Arizona, and Minnesota. *Id.*¶ 8. NCC-2 is a Delaware corporation, with its principal place of business in Delaware. *Id.* ¶ 4.

Balogun was born in Nigeria and immigrated to the United States in 1980. Balogun Dep. at 20. He currently works as an account representative for KCA Financial Corporation ("KCA"). *Id.* at 7. Balogun's primary responsibility at KCA is collecting on debts. *Id.* at 7-8. Prior to working for KCA, Balogun worked as a debt collector at Carmel Financial Corporation ("Carmel") for six years. *Id.* at 11-12. As part of this job at both Carmel and KCA, Balogun attended internal seminars and received training on the FDCPA, and became familiar with its provisions. *Id.* at 8-10.

## B.  BALOGUN INCURS AN OUTSTANDING DEBT ON HIS CREDIT CARD

Balogun incurred a credit card debt through an account he had with Chase Manhattan. *Id.* at 26, 30.  He knows that Defendants had the right to collect on that debt.  *Id.* at 30.  On February 3, 2005, Defendants brought suit in Marion County Court against Balogun to collect on the subject debt.  Defs.' Ex. B.  On February 23, 2005, a default judgment was entered against Balogun in the amount of $8,633.16.  *Id.*  Balogun's wages at Carmel were garnished in order to satisfy the debt, however, since Balogun has been with KCA, his wages have not been garnished and he still owes on the judgment.  Balogun Dep. at 29-30.  By letter dated March 13, 2007, Defendants offered to settle the debt by accepting a reduced sum of $3,729.00, from Balogun, however, Balogun did not accept the offer.  Defs.' Ex. C.

On March 4, 2005, MCM sent a letter to Balogun regarding the debt he had incurred on the Chase Manhattan credit card that was eventually charged off and purchased by NCC-2.  Defs.' Ex. D.  The letter was entitled "Settlement Opportunity," and offered Balogun 50% off of the $8,756.62 balance he owed.  Balogun testified that he agreed that the offer was a favorable opportunity to settle his debt and a good deal.  Balogun Dep. at 36.  Balogun did not take advantage of the offer because he could not raise the funds necessary to pay 50% of the debt.  *Id.*

On or about June 15, 2005, Balogun received a letter ("MCM letter") from MCM offering him the opportunity to eliminate the debt he now owed NCC-2, and obtain a line of credit, based on Balogun's ability to pay, through a Capital One credit card.  Pl.'s Ex. A.  The MCM letter stated, in relevant part:

3

Dear Ron Balogun,

Midland Credit Management, Inc. (MCM) would like to tell you about a great opportunity that Capital One® has for [NCC-2] customers whose charged-off accounts are serviced by MCM. MCM and [NCC-2] are not affiliated with Capital One. The terms and actual extension of credit are in the sole discretion of Capital One.

Capital One wants to offer you a way to pay off your debt. You don't have to pay it off all at once . . . just use your new card to make smaller, easier monthly payments. You don't need to make a deposit to get the card . . . and there's no annual fee.

**Here's how it all works . . .**
When you say "yes" to Capital One, the $8,656 you owe will be transferred to your new card. That way, you can pay back the debt in small monthly payments of only $35. And while you do, <u>you won't pay a penny of interest to Capital One on this debt</u>.

This card also lets you build a good payment record on this new obligation! Your Capital One Visa account will have an initial credit limit of $100. And, by making regular payments on this Capital One account, you can earn credit limit increases as frequently as every month, up to a maximum credit limit of $4,300 (you'll receive each credit limit increase no later than two billing periods after your payment is received).

**Want more good news? Here it is . . .**
When you say "yes," we'll stop all recovery activities on this debt. After Capital One receives your first payment, MCM will let the credit bureaus know that your charged-off account has been paid. However, if Capital One does not receive a payment in the first three billing cycles, your new credit card account will be canceled and your charged-off debt will be returned to MCM for further collection activity.

**Accepting your new credit card is easy.**
First, be sure to read all the details enclosed from Capital One about this new card. Then take a moment to complete and mail the form below in the postage-paid envelope provided. It only takes a minute, and remember . . . you're guaranteed this card!

*Id.* (internal footnotes omitted).

Balogun testified that he agreed that the Capital One credit card was an opportunity to "help rebuild . . . credit," and that he was interested in pursuing the credit card because the minimum payment of $35 per month was less than the $200.00 per month he was paying in garnished wages. Balogun Dep. at 39-41.  Balogun called MCM to obtain additional information about the Capital One opportunity, but decided to try to take advantage of MCM's original offer as outlined in the March 4, 2005, letter.  *Id.* at 45-56.  As mentioned above, Balogun was unable to raise the funds to take advantage of that settlement offer.  *Id.* at 36.

### C.  BALOGUN'S ALLEGATIONS

Balogun alleges that Defendants violated §§ 1692(c) and (d) of the FDCPA by providing information about Balogun and the debt he owed to Capital One in order to facilitate the offer in MCM's letter dated June 15, 2005.  Compl. ¶ 40.  More specifically, Encore's annual report on Security and Exchange Commission ("SEC") Form 10-K, for the twelve-month period ending December 31, 2003, states:

> *Account Balance Transfer.*  We may transfer to our credit card partner accounts with a low expected value or those for which collection efforts have failed.  The credit card partner may offer the debtor the opportunity to put the balance on a credit card.  If the account is transferred we receive an agreed upon payment.  We retain the ownership of and the ability to collect on the charge-off accounts that the card issuer has solicited until a successful balance-transfer has occurred.

Pl.'s Ex. B, at 10.

### D.  THE *HERNANDEZ v. MIDLAND CREDIT* CASE

The *Hernandez* plaintiff challenges the disclosure of debtor information to Capital One in connection with the balance transfer program described above.  *See, e.g.*, *Hernandez v. Midland*

5

*Credit Mgmt., Inc.*, No. 04 C 7844, 2007 WL 723561, at * 9 (N.D. Ill. Mar. 6, 2007) (stating that "Plaintiff contends that Defendants' sending debtors' names, addresses, and account information to the Credit Card Partner violates § 1692c(b), which prohibits third-party communications without the debtors consent . . . ."). The Court notes that the specific notice involved in *Hernandez* is different than the offer letter described here. *Id.* at *3. The *Hernandez* court granted summary judgment in favor of plaintiffs on their claim under § 1692c(b); damages have yet to be decided. *See id.* at *24 (the Court notes that a corrected version of the Order dated March 6, 2007, was issued on September 29, 2007, however, for the Court's purposes in this case, there is no material change to the facts or outcome).

## II. STANDARD FOR CLASS CERTIFICATION

Certification of a class is governed by Rule 23. The propriety of class certification does not depend on the outcome of the suit or on whether a party will prevail on the merits, but whether the requirements of Rule 23 are met. *See Eisen v. Carlisle*, 417 U.S. 156, 177-78 (1974); *Chavez v. Ill. State Police*, 251 F.3d 612, 620 (7th Cir. 2001). To show that class certification is justified in this case, Balogun must first satisfy the four requirements of Rule 23(a). *See Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000); *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 475 (7th Cir. 1997). The prerequisites in Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Once the Court determines that Balogun has satisfied these prerequisites, then the Court must determine whether he meets one or more of the requirements of Rule 23(b). *See Williams*, 204 F.3d at 760; *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Balogun seeks certification under Rule 23(b)(3), which requires the Court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The Court first addresses whether Balogun has met the prerequisites to class certification defined by Rule 23(a); it will then turn to his arguments with respect to Rule 23(b) if necessary.

### III. DISCUSSION

#### A. DEFENDANTS' REQUEST TO STAY CERTIFICATION

Citing no authority, Defendants contend that the Court should stay determination of class certification pending a final determination in *Hernandez* and Defendants' anticipated appeal in *Hernandez*. Defendants argue that Balogun is certain to raise issue preclusion in this case to estop Defendants from re-litigating the issue of liability based on their disclosure of information to Capital One. Balogun asserts that his claim is different from that in *Hernandez* because the document at issue is different.

The Court concludes that it is unnecessary to stay ruling on the instant motion. As stated above in the standard section of this Order, the propriety of class certification does not depend on the outcome of the suit or on whether a party will prevail on the merits, but whether the requirements of Rule 23 are met. *See Eisen*, 417 U.S. at 177-78; *Chavez*, 251 F.3d at 620. Although Defendants

may be correct that a stay of this cause would be prudent because there are issues on the merits that overlap with the issues in *Hernandez*, determination of whether or not this cause should proceed as a class action is not tied to the merits. For this reason, the Court **DENIES** Defendants' request to stay a ruling on Balogun's Motion for Class Certification. However, this decision does not preclude Defendants from raising the issue of a stay on the resolution of Balogun's claims on the merits.

### B. WHETHER OR NOT CLASS CERTIFICATION IS WARRANTED

Defendants challenge Balogun's ability to meet the requirements of Rule 23(a). The Court addresses each argument in turn.

#### 1. Numerosity

Defendants assert that Balogun has no evidence or a reasonable estimate of the number of class members. Defendants argue that Balogun's conclusory allegation that "it is reasonable to infer that the number of class members for an Indiana class is sufficient . . ." is insufficient to establish that the class is so large that joinder is impractical. Defs.' Resp. at 8-9 (citing, *inter alia*, *Marcial v. Coronte Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989); *Gray-Mapp v. Sherman*, 100 F. Supp. 2d 810, 814 (N.D. Ill. 1999)). However, in reply, Balogun presents evidence that Defendants sent the MCM letter to approximately 14,844 people in Indiana. This is sufficient to satisfy the numerosity requirement of Rule 23(a) because joinder of 14,844 people would be impractical.

### 2. **Commonality & Typicality**

Defendants do not challenge Balogun's ability to establish that there are common issues of law or fact in this case, nor do they challenge that Balogun's claims would be typical of those of similarly situated class members. For purposes of review, however, the Court makes the following findings with respect to these prerequisites: The primary issue in this case is whether or not Defendants disclosed information about debtors to a third party in violation of the FDCPA. As Balogun asserts, the only individual issue is the identification of the consumers who received the MCM letter. Moreover, upon proof that Defendants violated the FDCPA, Balogun's claim would be identical to those of other class members. For these reasons, the Court concludes that Balogun has met his burden to show that there are common issues of law and fact, and that Balogun's claims would be typical of those of other class members.

### 3. **Adequacy of Representation**

Defendants challenge Balogun's ability to establish that he and his selected counsel will adequately represent and/or protect the interests of the class. With respect to Balogun, Defendants contend that Balogun lacks knowledge about the subject matter of his allegations, and that he has ceded control of the litigation to his counsel as evidenced by testimony at his deposition. Specifically, Balogun stated in this deposition that he thought the Capital One credit card opportunity was a "great deal" and an opportunity for him to "rebuild his credit." Balogun Dep. at 36. Moreover, Balogun pursued other options for discharging his debt before seeking counsel. *Id.* Balogun, assert Defendants, could not even articulate what Defendants had done to violate the

FDCPA, and had only spoken with his counsel one or two times to this point in the litigation. *Id.* at 52, 66.

Balogun contends that Defendants have mischaracterized his deposition testimony and that he has adequate knowledge of the subject matter of this litigation and that he has been involved in making decisions about the litigation. Specifically, Balogun asserts that the testimony Defendants refer to is taken out of context. Balogun states that he actually testified that the 50% settlement offer was a good deal, but he could not raise enough money to take advantage of that offer. *Id.* at 35-36. Furthermore, Balogun points out that he consider the offer in the MCM letter, but after investigating it, learned that he would not be better off than if he were to take advantage of the settlement offer, and that it would take him a long time to pay off the debt if he took advantage of the Capital One offer. *Id.* at 44-46.

Balogun also asserts that he testified that he understands the protection provided to consumers under the FDCPA regarding debt collection practices, *id.* at 8-10, 16, 37-38, 51, and that he understands his obligation to the putative class members. *Id.* at 52-53, 56-58. Moreover, Balogun states that he understands his role as class representative and has assisted counsel in pursuit of his claims. *Id.* at 30-33, 59.

The Court concludes that Balogun would adequately represent the interests of the class members. The requirements for a class representative are limited, and the touchstone is, generally, whether there is any potential collusion between the representative and the lawyers or whether therre is a potential conflict of interest. *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 896 (7th Cir. 1981), *cert. denied*, 455 U.S. 1017 (1982). As the Seventh Circuit noted in *Eggleston*, the U.S. Supreme Court has found adequate a "named plaintiff [who] did not

understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants." *Eggleston*, 657 F.2d at 896 (discussing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366 (1966)).

Based on these standards, the Court concludes that Balogun is an adequate representative. It is clear from Balogun's deposition testimony that he understands that the FDCPA protects debtors from the unauthorized disclosure of debt information to third parties. Balogun Dep. at 8-10, 16, 37-38, 51. Balogun testified that when he received the MCM letter, he was wondering why MCM would have released his information to Capital One, because he had no relationship with Capital One. *Id.* at 38. Further, he realized there was "a trick to it or something" because at $35.00 per month, it would take him a long time to pay off the debt. *Id.* at 39. Balogun also testified that the MCM letter was contrary to law because it "said" that MCM had given information about his debt to a third party. *Id.* at 51. Certainly these statements indicated that Balogun understands the allegations brought in this suit. Moreover, it is of little consequence that Balogun relied upon his lawyers to specifically identify the provisions of the FDCPA or other laws that Defendants allegedly violated with the MCM letter because that is the purpose of counsel. *Accord Murray v. New Cingular Wire Servs.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005) ("Understanding the minutia of a case is not a prerequisite to being a class representative."). Balogun also evidenced that he understood his responsibility to represent the interests of the class, not his own, when he turned down and offer to waive his debt, plus give him $5,000.00 to settle the case by himself. Balogun Dep. at 56-58. For these reasons, the Court concludes that Balogun is an adequate representative of the purported class.

Defendants also challenge the adequacy of Balogun's class counsel, Edelman, Combs, Latturner & Goodwin, LLC ("ECL&G"). Specifically, Defendants contend that EGL&G has manufactured a claim in this case out of discovery obtained under a protective order in another case. Moreover, EGL&G is class counsel in *Hernandez* and in another case against Defendants in the Northern District of Illiniois, *Young v. Midland Credit Mgmt., Inc.*, No. 06-182 (N.D. Ill.) (collectively, the "Illinois cases"), both of which are based on the same balance transfer program at issue in this case, but with different class periods and different geographic limits. Defs.' Exs. K & L. Defendants claim that EGL&G used the discovery obtained in the Illinois cases to solicit a plaintiff who could represent putative class members in Indiana to assert the same claims against Defendants. Defendants assert that EGL&G's behavior evidences its intent to extort attorneys' fees from Defendants, which other courts in the Seventh Circuit have found to be a pattern of improper conduct making counsel inadequate here. Defs.' Resp. at 11-13 (citing, *inter alia*, *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 836 (7th Cir. 2005); *Pettit v. Retrieval Masters Creditors Bureau*, 211 F.3d 1057, 1059-60 (7th Cir. 2000)).

EGL&G contends that there is no evidence of any impropriety in this case like that in the cases Defendants cite. EGL&G states that in his responses to discovery requests, Balogun makes clear that the allegations in paragraph 30 of the Complaint were based on discovery in *Waldon v. Capital One Financial Corp.*, Case No. 03-2 CV 1122-D (N.D. Tx.), which was not subject to a protective order. Pl.'s Reply Ex. A, at 13. Moreover, ECL&G was not involved in that suit. Furthermore, ECL&G contends that a plaintiff is not required to include the broadest possible class definition in his lawsuit. ECL&G argues that the *Hernandez* claims are distinct from those here, and that the class definition does not include any of the putative class members in this cause. ECL&G

12

also points to the fact that the activity prompting the suit in *Hernandez* took place earlier than the activity prompting the instant lawsuit, and the fact that *Hernandez* and this suit were filed a year apart evidence that there was a legitimate reason for having more than one suit. Moreover, ECL&G contend that there is nothing in the FDCPA that limits a defendant from being exposed to more than one suit based on the same or similar behavior toward different classes of individuals, or for continuing violations based on the same or similar conduct. Pl.'s Reply, at 5-6 (citing *Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000); *Nichols v. Northland Groups, Inc.*, Nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 WL 897867, at *10 (N.D. Ill. Mar. 31, 2006)).

The Court concludes that there is no evidence from which the Court can conclude that ECL&G's conduct in this case warrants a finding that it is not qualified to represent the proposed class in this case. It is clear from the declaration of Daniel A. Edelman ("Edelman") that ECL&G has extensive experience as plaintiffs' counsel in various consumer suits under the FDCPA. *See, generally*, Pl.'s Ex. F, Edelman Decl. In addition, the Court concludes that there is little merit to Defendants' assertion that ECL&G has engaged in frivolous or vexatious behavior that would cause this Court to find such behavior inappropriate for class counsel. As indicated in Balogun's answers to interrogatories, the information contained in the Complaint was not obtained through discovery in cases under a protective order. *See* Pl.'s Reply Ex. A, at 13. Furthermore, although the Court can understand Defendants' frustration with being subject to multiple law suits about their account balance transfer program, the Seventh Circuit has held that the FDCPA requires neither a nationwide class, *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 347 (7th Cir. 1997), nor a limit on Defendants' exposure to more than one FDCPA class action suit. *Sanders*, 209 F.3d at 1002. In essence, the Seventh Circuit has concluded that the interests in protecting the consumer who acts within the

statute of limitations provided in the FDCPA outweighs the interests of defendants who continue behavior that violates the FDCPA despite being on notice that such behavior is suspect. *See Sanders*, 209 F.3d at 1002 (weighing the purpose of the 1% net worth limitation on FDCPA damages and stating that "there is no provision that limits defendants being exposed to more than one FDCPA class action lawsuit"); *Mace*, 109 F.3d at 347 (stating that "if a debt collector is sued in one state, but continues to violate the statute in another, it ought to be possible to challenge such continuing violations"); *id.* at 343 (distinguishing the damages provisions in the Truth in Lending Act from those in the FDCPA and following the plain language of the FDCPA statute). In this case, the class has been limited to individuals in Indiana who received letters similar to the MCM letter, in the period between one year prior to the law suit through twenty days after the law suit was filed. There is no evidence that a similar group's interests are before either the *Hernandez* or the *Young* courts. Moreover, having been on notice by the filing in *Hernandez* that the account balance transfer program might run afoul of the FDCPA, Defendants proceeded with the program at their own risk. The Court cannot conclude on the evidence here that ECL&G's filing of the instant law suit was unreasonable and vexatious.

For the reasons stated herein, the Court concludes that Balogun and ECL&G are adequate representatives of the class.

### 4. Rule 23(b)(3) Requirement

Having concluded that Balogun has met the requirements of Rule 23(a), the Court now turns to whether Balogun has met the requirements in Rule 23(b)(3) "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual

14

members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  There is no dispute that questions of law and fact common to the class members predominate here.  The allegation centers around the MCM letter and disclosure of information regarding debts to Capital One pursuant to Defendants' account balance transfer program.  Although Balogun alleged some emotional distress in conjunction with Defendants' alleged violation, there is no allegation that these individual damages would predominate over those common to the class.  Finally, because individual recovery under the FDCPA can be relatively small, and many consumers are unfamiliar with its protections, a class action is the best method for the fair and efficient adjudication of the issue presented here, where the underlying liability issue can be determined relative to the whole class.

For these reasons, the Court concludes that Balogun has met the requirements of Rule 23(b)(3).

### C. SUMMARY

The Court has concluded that Balogun has evidenced that class action treatment of the issues raised by his Complaint is proper pursuant to Federal Rule of Civil Procedure 23.  As such, Plaintiff's Motion for Class Certification is **GRANTED**.  The class shall consist of: "All natural persons in Indiana who received a letter similar to that described herein as the MCM letter between November 29, 2004, and December 19, 2005."

## IV.  CONCLUSION

For the reasons stated herein, the Court **GRANTS** Plaintiff's, Ron Balogun, Motion for Class Certification.  The class shall consist of:  "All natural persons in Indiana who received a letter similar to that described herein as the MCM letter between November 29, 2004, and December 19, 2005."  The Court **APPOINTS** the firm of Edleman, Combs, Latturner, & Goodwin, LLC, as counsel for the class.

The Court directs the Clerk of the Court to **LIFT the STAY** in this matter until further order of the Court.  Defendants, Midland Credit Management, Inc., Midland Funding NCC-2 Corporation, and Encore Capital Group, Inc., have leave of the Court to file an appropriate motion to stay this cause on the merits on the basis that Defendants are still litigating substantially similar or the same issues in the cause styled *Hernandez v. Midland Credit Mgmt., Inc.*, No. 04 C 7844, 2007 WL 723561 (N.D. Ill. Mar. 6, 2007), now pending in the Northern District of Illinois.

IT IS SO ORDERED this 5th day of October, 2007.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Electronically distributed to:

Cathleen Maria Combs
EDLEMAN COMBS LATTURNER & GOODWIN LLC
ccombs@edcombs.com

Daniel A. Edelman
EDLEMAN COMBS LATTURNER & GOODWIN LLC
dedelman@edcombs.com

Richard E. Gottlieb
DYKEMA GOSSETT PLLC
rgottlieb@dykema.com

James W. McConkey
DYKEMA GOSSETT PLLC
jmcconkey@dykema.com

Cassandra P. Miller
EDLEMAN COMBS LATTURNER & GOODWIN
cmiller@edcombs.com

Michelle R. Teggelaar
EDLEMAN COMBS LATTURNER
mteggelaar@edcombs.com

Renee L. Zipprich
DYKEMA GOSSETT PLLC
rzipprich@dykema.com